

FILED

APR 3 0 2010

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Newport News Division**

CORY M. HALL,

      Plaintiff,

    v.                            ACTION NO. 4:09cv136

CITY OF NEWPORT NEWS,

JAMES D. FOX, Chief of Police,
Officially and Individually,

JOE MOORE, Assistant Chief of Police,
Officially and Individually,

NEIL A. MORGAN, Assistant City Manager/Acting City Manager,
Officially and Individually,

and RANDY HILDEBRANDT, Former City Manager,
Officially and Individually,

      Defendants.

## OPINION

This matter comes before the court on defendants' motion to dismiss plaintiff's Amended Complaint for lack of federal jurisdiction, or in the alternative, for failure to state a claim upon which relief can be granted, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), respectively. For the reasons set forth herein, the court **DENIES** the defendants' motion to dismiss for lack of federal jurisdiction and **GRANTS** the defendants' motion to dismiss for failure to state a claim. As the court conducted a hearing on the defendants' first motion to dismiss on January 19, 2010, and the court finds another hearing on

these matters unnecessary, the court **DENIES** the defendants' request for a second hearing.

## I. Factual and Procedural Background

On July 6, 1999, defendant City of Newport News (the "City") hired plaintiff Cory M. Hall ("Hall") to serve as a police officer in the Newport News City Police Department (the "Police Department").   (Am. Compl. ¶ 8.)   On or about November 2006, defendant James D. Fox ("Fox"), the Chief of Police, discharged Hall from his position based upon the following disciplinary charges: improper procedure, untruthfulness during the course of an investigation, excessive use of force, and improper/unlawful arrest.   (Id. ¶ 17.)   In response, Hall initiated the City's grievance procedure to appeal his discharge.   (Id. ¶ 18.)

The grievance panel conducted a hearing on October 2, 3, and 4, 2007.   (Id. ¶ 19.)   On October 11, 2007, the grievance panel issued its decision, which dismissed three of the four charges against Hall and reduced the fourth charge of untruthfulness during the course of an investigation (Level IV misconduct) to essentially one of negligent record-keeping (Level II misconduct).   (See id. Ex. A, Ex. B.)   As Level II misconduct does not justify dismissal, the grievance panel directed that Hall be reinstated as a police officer, but specifically without back pay.   (See id.)

Pursuant to Newport News City Code Section 2-186, the City's Director of Human Resources exercised the right to remand the

2

decision to the grievance panel for reconsideration, on the basis that the decision was inconsistent with law and written policy. (See id. ¶ 21.)   The grievance panel, however, affirmed its original decision in a supplemental ruling issued on November 5, 2007.  (Id. ¶ 21 & Ex. B.)

After months passed without Hall's reinstatement, Hall instituted a proceeding in the Circuit Court for the City of Newport News on April 23, 2008, again pursuant to Newport News City Code Section 2-186, seeking implementation of the grievance panel's decision ordering his reinstatement.  (Id. ¶ 26.)  In response, the City challenged the grievance panel's decision as being contrary to law, and therefore ineligible for implementation, on the grounds that reinstating Hall at that point, without back pay, would be beyond the City's authority under the Level II misconduct sustained by the grievance panel.   In a letter opinion, dated August 18, 2008, the circuit court rejected the City's argument, finding it "ironic" that the "City would be objecting to a disposition which would inure to their benefit by saving eighteen months worth of back pay to the grievant." (Defs.' Mem. Supp. Mot. Dismiss Am. Compl. Ex. 2 at 5.)[1]  Thus, the circuit court held that

[1] The August 18, 2008 letter opinion of Judge Fisher was attached to the defendants' motion to dismiss (Defs.' Mem. Supp. Mot. Dismiss Am. Compl. Ex. 2), along with a copy of Judge Fisher's September 23, 2008 final order (Defs.' Mem. Supp. Mot. Dismiss Am. Compl. Ex. 3).   Hall relies on these documents in the Amended Complaint (see Am. Compl. ¶ 26), the documents are integral to the Amended Complaint, and Hall does not dispute their authenticity.

3

reinstating Hall without back pay would not be "an error as a matter of law" because Hall had sought implementation, not modification, of the grievance panel's decision, meaning that Hall had "implicitly in his petition and explicitly at the hearing . . . waived any issue of a claim for back pay against the City as a result of the grievance panel decision." (Id.) The circuit court then issued its final order granting Hall's reinstatement on September 23, 2008.

Even after the final order of the circuit court, however, the City did not immediately reinstate Hall, who then filed a Motion to Compel. (Am. Compl. ¶ 28.) After a hearing was held by the circuit court on that motion in December 2008,[2] the City finally allowed Hall to return to work on December 22, 2008. (Id. ¶ 24, 28.) From the time of his discharge until when he returned to work, Hall received no salary or employee benefits from the City. (Id. ¶ 29.) Upon returning to work, Fox wrote a letter prohibiting Hall from making any arrests or exercising his police powers (id. ¶ 37), and Hall was assigned to a civilian position in the Police Department's Records Bureau (id. ¶ 44). According to Hall, the Police Department's personnel records maintain that the charges

---

Therefore, the court may properly consider the documents when evaluating the defendants' motion to dismiss. See Blankenship v. Manchin, 471 F.3d 523, 526 n.1 (4th Cir. 2006).

[2] The exact date in December that the motion was filed and heard are not in the Amended Complaint.

against him were all sustained, contrary to the decision of the grievance panel.  (Id. ¶ 31.)

On October 9, 2009, Hall filed a Complaint, pursuant to 42 U.S.C. § 1983, alleging that defendants have deprived him of liberty and property without due process of law, in violation of the Fifth and Fourteenth Amendments to the United States Constitution.  In response, on November 10, 2009, defendants submitted a motion to dismiss the plaintiff's Complaint for lack of federal jurisdiction and for failure to state a claim upon which relief can be granted.  On January 19, 2010, the court conducted a hearing on that motion, and by written order, granted Hall leave to amend the Complaint, for the reasons stated at the hearing.  On February 8, 2010, Hall submitted an Amended Complaint again alleging deprivation of due process, to which defendants' responded with another motion to dismiss for lack of federal jurisdiction and for failure to state a claim upon which relief can be granted. That motion has been fully briefed and is now ripe for review.

## II. Jurisdiction

The parties' disagreement as to jurisdiction stems from an underlying disagreement as to the cause of action pled in Count I of the Amended Complaint.  Hall contends that Count I properly alleges a claim under the Fourteenth Amendment to the United States Constitution, in particular, that the defendants violated Hall's due process rights when they delayed in complying with the

grievance panel's decision ordering his reinstatement. The defendants, however, treat Count I as if it were a claim for back pay under state law, arguing that, should the court dismiss the Fourteenth Amendment claims in Counts II and III, then the court should decline supplemental jurisdiction over Count I. See, e.g., Stone v. Immigration & Naturalization Serv., 514 U.S. 386, 411 (1995) (noting that the "district court may, but need not, decline to exercise supplemental jurisdiction over a claim when it has dismissed all claims over which it has original jurisdiction"). For the following reasons, however, the court finds Count I to claim a violation of the Fourteenth Amendment, not state law, and therefore, the defendants' jurisdictional arguments are inapposite.

Although the court is aware that Count I of the Amended Complaint technically omits reference to the Fourteenth Amendment, the court also finds the defendants' treatment of Count I as a claim under state law to be unfounded. Were the Amended Complaint taken in isolation, the court would understand the defendants' apparent confusion as to the legal source of Hall's claims. However, the defendants' counsel was present at the hearing when the court questioned Hall's counsel regarding the nature of his claims, and it was clear that Hall's claim for back pay was being brought under the Fourteenth Amendment. Indeed, the defendants' original briefing responded directly to Hall's claim that the delay in implementation of the grievance panel's decision was

6

unconstitutional under the Fourteenth Amendment. (<u>See</u> Defs.' Reply Supp. Mot. Dismiss Compl. at 4-6.)   The defendants have had adequate notice of the nature of Hall's claim, and as such, the court will consider the claim as an action under 42 U.S.C. § 1983 for violation of the Fourteenth Amendment, as requested by Hall. Therefore, the defendants' motion to dismiss for lack of federal jurisdiction is **DENIED**.[3]

### III. Standard of Review

In order to survive a Rule 12(b)(6) motion, a complaint must "aver enough facts to state a claim to relief that is plausible on its face." See <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).   Although the court will accept as true the factual allegations of a complaint, <u>see</u> <u>id.</u> at 555-56, the court need not

---

[3] The court finds that the defendants' <u>res judicata</u> and <u>Burford</u> abstention arguments were based upon treating Count I as a state law claim for back pay that was "subject to a state administrative framework" (<u>see</u> Defs.' Mem. Supp. Mot. Dismiss Am. Compl. at 6), and therefore, the court declines to address those arguments in detail.  Hall's due process claims were not litigated in the circuit court, nor have the defendants shown that they could have been litigated in an implementation procedure.  <u>See</u> <u>Martin-Bangura v. Va. Dept. of Mental Health</u>, 640 F. Supp. 2d 729, 738 (E.D. Va. 2009) (noting Virginia's claim preclusion doctrine bars only those claims that could have been litigated in the prior action).  Similarly, the defendants have given the court no reason why Hall's attempt to <u>enforce</u> his rights created by the grievance panel would interfere with Virginia's administrative scheme so as to justify <u>Burford</u> abstention.  <u>See</u> <u>New Orleans Pub. Serv., Inc. v. Council of New Orleans</u> 491 U.S. 350, 359 (1989) (noting that federal courts have a "virtually unflagging" obligation to adjudicate claims within their jurisdiction, with abstention being "the exception, not the rule").   Thus, the court finds the defendants' preclusion and abstention arguments to be inapposite.

accept as true legal conclusions that are couched as factual allegations.  Id. (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).  The plaintiff must allege facts sufficient to support the inference that all elements of his cause of action exist.  See Jordan v. Alternative Res. Corp., 458 F.3d 332, 344-45 (4th Cir. 2006).

## IV. Discussion

A plaintiff suing under 42 U.S.C. § 1983 must plead only two allegations in order to state a claim for relief: (1) that some person has deprived the plaintiff of a federal right, and (2) that the person who deprived the plaintiff of that right was acting under color of state law.  See Gomez v. Toledo, 446 U.S. 635, 640 (1980); see also Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993) (rejecting heightened pleading requirement in § 1983 cases).  In this case, Hall has alleged that the defendants, acting under the color of state law, have deprived him of his constitutional right to due process under the Fourteenth Amendment.  As there is no question that the defendants acted under the color of state law, the question becomes whether plaintiff has adequately alleged a violation of due process.

The Fourteenth Amendment to the United States Constitution guarantees that no state shall "deprive any person of life, liberty, or property, without due process of law."  U.S. Const.

8

amend. XIV, § 1.   In order to state a claim for a violation of procedural due process, a plaintiff must allege that he has a constitutionally protected "liberty" or "property" interest that has been deprived by some form of state action.  See Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 167, 172 (4th Cir. 1988).   In addition to alleging a deprivation, however, the plaintiff must also plead facts sufficient to support an inference of constitutionally inadequate process.   Cf. Zinermon v. Burch, 494 U.S. 113, 126 (1990) ("The constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process.").  Applying these principles, the court will address each count of the Amended Complaint in turn.

## A. Count I: Delay in Implementation (Procedural Due Process)

Hall alleges that the City's delay in reinstating him as a police officer constitutes a deprivation of property without due process.   In response, the defendants argue that Hall received all the process that he was due, including the proceedings before the grievance panel and the implementation procedure, and therefore, there can be no due process violation.   The defendants also assert that there was no unreasonable delay in those proceedings that would rise to the level of a constitutional violation.

The Due Process Clause requires that a hearing be provided "at a meaningful time."  Cleveland Bd. of Educ. v. Loudermill, 470 U.S.

9

532, 547 (1985).  In <u>Loudermill</u>, the Supreme Court indicated that at "some point, a delay in the post-termination hearing would become a constitutional violation." <u>Id.</u>  Nevertheless, the Court found that a "9-month adjudication is not, of course, unconstitutionally lengthy <u>per se</u>" and that Loudermill had given "no indication that his wait was unreasonably prolonged other than the fact that it took nine months." <u>Id.</u>[4]  In fact, the Court characterized Loudermill's description of the process as "reveal[ing] nothing about the delay except that it stemmed in part from the thoroughness of the procedures." <u>Id.</u>  Thus, the Court held that the "chronology of the proceedings set out in the complaint, coupled with the assertion that nine months [wa]s too long to wait, d[id] not state a claim of a constitutional deprivation." <u>Id.</u>

Under <u>Loudermill</u>, in order to state a claim for an unconstitutional delay, the plaintiff must allege more than just the delay itself, including other facts that might suggest that the delay is "unreasonably prolonged" so as to rise to the level of a constitutional violation.  <u>See id.</u>  According to Hall, the

---

[4] The nine-month time period in <u>Loudermill</u> is calculated from the time of the plaintiff's official discharge, on November 13, 1980, up until the issuance of the result of the grievance procedure, on August 21, 1981.  470 U.S. at 535-36.  Unlike Hall, Loudermill did not seek review of the grievance procedure in state court and instead proceeded directly to federal court.  <u>Id.</u> at 536. The court references the <u>Loudermill</u> case for its reasoning and not to make a direct comparison of the proceedings involved or the corresponding months of delay.

10

allegedly "unconstitutional" delay began at the point that the grievance panel ruled in his favor,[5] and lasted until he was reinstated on December 22, 2008. Hall attempts to distinguish Loudermill by noting that his delay occurred after the grievance panel had reached its decision to reinstate him rather than before his right to reinstatement was determined. Nevertheless, Hall overlooks the fact that a significant portion of the allegedly "unconstitutional" delay was attributable to standard procedural delays, as was the case in Loudermill. These procedural delays were part of the process that was due, and were occasioned by both the City and Hall himself.

The grievance panel issued its original decision directing Hall's reinstatement on October 11, 2007. Pursuant to Newport News City Code Section 2-186, the City was then entitled to remand the decision to the grievance panel for reconsideration. As explicitly admitted by Hall in the Amended Complaint, the City had the "right

---

[5] Paragraph 29 of the Amended Complaint states, "Notwithstanding [Hall's] reinstatement, which was ordered on or about November 5, 2007, the city failed to pay [him] any salary or provide him with any employee benefits for the period from October 11, 2007 until December 22, 2008 . . . ." (emphasis added). Thus, it is unclear from the pleadings whether Hall considers the "delay" to commence upon the grievance panel's original or supplemental ruling. However, at the hearing on January 19, 2010, Hall's counsel represented to the court that Hall only seeks back pay from the time of the grievance panel's supplemental ruling on November 5, 2007. Nevertheless, the court finds the short time difference between the grievance panel's original and supplemental ruling to be inconsequential, as the reasoning and the result reached by the court in this case would be the same regardless of which date is used. See infra at 11-13; note 7.

11

under the grievance procedure to ask for remand on that decision" (id. ¶ 21 (emphasis added)), and Hall does not challenge the constitutionality of that right.   Hall also has not alleged that the grievance panel took an unreasonable amount of time to issue its supplemental ruling, which occurred on November 5, 2007.

Following the grievance panel's supplemental ruling, Hall sought to implement the grievance panel's decision in the Circuit Court for the City of Newport News on April 23, 2008, again pursuant to Newport News City Code Section 2-186. (Id. ¶ 26.)   The City is required to have such an implementation procedure by Title 15.2, Section 1507 of the Code of Virginia.   In that regard, the implementation lawsuit is a part of the process to which Hall is entitled under Virginia law.   To the extent that there was a "delay" between the grievance panel's supplemental decision on November 5, 2007, and the commencement of the implementation lawsuit on April 23, 2008, that delay is attributable to Hall's failure to file the implementation suit at an earlier time.

The circuit court then issued its letter opinion on August 18, 2008, and its final order on September 23, 2008.[6]   There is no allegation that the circuit court took an unreasonable or unusual amount of time to render its opinion.   Thus, up until the circuit court's final order, approximately eleven months after the

---

[6] See supra note 1 and accompanying text.

12

grievance panel's order of reinstatement,[7] Hall has alleged no facts suggesting any deviations from the procedures established by state and municipal law, or in the alternative, why such procedures are defective.   Indeed, under Loudermill, the conclusion would follow that eleven months is not unconstitutional per se, absent some other allegation of an "unreasonably prolonged" delay by the defendants.   See Loudermill, 470 U.S. at 547.   The question then becomes whether the additional three-month delay, i.e., between the circuit court's final order and Hall's reinstatement on December 22, 2008, constitutes an "unreasonably prolonged" delay that rises to the level of constitutional injury.

When the City delayed in reinstating Hall following the circuit court's final order, Hall "return[ed] to court in December 2008 on a Motion to Compel."   (Am. Compl. ¶ 28.)[8] Following a hearing in circuit court on that motion, Hall was reinstated by the City on December 22, 2008.   (Id. ¶¶ 24, 28.) While the Amended Complaint does not disclose the contents of that hearing, Hall may have been eligible for sanctions based upon the City's delay in complying with the circuit court's order.   See, e.g., Al-Qadaffi v. Commonwealth, No. HD-1230-4, 1994 WL 1031383,

---

[7] The court's analysis is the same regardless of whether it considers the "delay" to begin on the date of the grievance panel's original or supplemental ruling.  See supra note 5 and accompanying text.

[8] See supra note 2 and accompanying text.

at *6 (Va. Cir. Ct. Oct. 17, 1994) (ordering defendant to pay fine to plaintiff for contempt of order implementing grievance panel decision). However, there is no constitutional remedy for a three-month delay in complying with a state court judgment per se, and this court simply cannot allow Count I to proceed unless a constitutional injury has been alleged.

This court finds that the approximately three-month delay following the circuit court's final order does not elevate the eleven months of standard proceedings prior to that point into a constitutional violation. Although Loudermill fails to indicate a time period in which post-termination procedures must be complete, the reasoning from the case is clear that the plaintiff must allege an "unreasonably prolonged" delay. 470 U.S. at 547. Hall has alleged no facts to support that the procedure employed by the City involved an "unreasonably prolonged" delay other than the delay itself. Therefore, the court finds that Hall has failed to allege facts sufficient to support an inference that he was deprived of his right to continued employment on account of the delay in post-termination procedures. See, e.g., Hill v. City of Scranton, 411 F.3d 118, 134 (3rd Cir. 2005) ("We have held that the 'mere allegation of a . . . twenty-month delay' without supplementary allegations concerning the cause of the delay does not state a constitutional claim." (quoting Ritter v. Cohen, 797 F.2d 119, 124 (3d Cir. 1986))); Thomasson v. Modlinski, No. 95-1663, 1996 WL

14

34669, at *4 (4th Cir. Jan. 30, 1996) (finding delay of eighteen months between termination and reinstatement was "nonegregious" and therefore "did not amount to a deprivation of due process").[9]   The court, therefore, **GRANTS** defendants' motion to dismiss Count I for failure to state a claim upon which relief can be granted.

## B. Count II: Employment Records (Due Process-Liberty Interest)

The Due Process Clause protects a public employee's liberty interest in the combination of his reputation and his choice of occupation.  See <u>Paul v. Davis</u>, 424 U.S. 693, 701 (1976) (finding due process rights only arise when damage to reputation is tied to "some more tangible interests such as employment").  According to Hall's Amended Complaint, the City's personnel records incorrectly indicate that the grievance panel sustained the disciplinary charges against him. (Am. Compl. ¶ 31.)  Thus, Hall alleges that the City, by maintaining inaccurate personnel records, has deprived him of his liberty interest in his reputation and occupation, in violation of the Fourteenth Amendment.  (<u>See</u> <u>id.</u> ¶ 32.)

"To state this type of liberty interest claim under the Due Process Clause, a plaintiff must allege that the charges against

---

[9] In seeking a different result, Hall mistakenly relies on <u>Wagner v. City of Memphis</u>, 971 F. Supp. 308 (W.D. Tenn. 1997).   In that case, because the Mayor had ordered that Wagner be terminated regardless of what transpired at his pretermination hearing, the court found that Wagner had not received adequate process.  <u>Id.</u> at 317.   <u>Wagner</u> is not on point with the case at bar, as the process provided to Hall was not predetermined in any manner, and in fact resulted in his reinstatement.

him: (1) placed a stigma on his reputation; (2) were made public by the employer; (3) were made in conjunction with his termination or demotion; and (4) were false." Sciolino v. City of Newport News, 480 F.3d 642, 646 (4th Cir. 2007) (citing Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 167, 172 n.5 (4th Cir. 1988)). In order for Count II to survive the defendants' motion to dismiss, however, the plaintiff must allege facts that, when taken as true, are sufficient to support the inference of all four Sciolino elements. See generally Jordan, 458 F.3d at 344-45 (requiring allegations sufficient for all elements of a cause of action on a motion to dismiss).

As the court must assume as true the allegations of the Amended Complaint, Hall has properly alleged facts to support the first, second, and fourth Sciolino elements. With respect to the first element, a charge by an employer of an employee's dishonesty satisfies the stigma element. See Sciolino, 480 F.3d at 646 n.2. The charges before the grievance panel included, inter alia, a charge of "untruthfulness during the course of an investigation." (Am. Compl. ¶ 17.) Thus, allegedly inaccurate records indicating that such a charge had been sustained would satisfy the stigma element. (See id. ¶ 31.)

As to the second element of publicity, "an employee must allege (and ultimately prove) a likelihood that prospective employers (i.e., employers to whom he will apply) . . . will

16

inspect the file" containing the allegedly stigmatizing information. <u>Sciolino</u>, 480 F.3d at 650.  Hall has alleged that "[c]onsistent with its policies and procedures, the City has, in the past, disclosed . . . false and stigmatizing information to prospective employers of the Plaintiff and it is therefore highly likely that said information will be disclosed and made available by the Defendants to prospective employers of the Plaintiff in the future."  (Am. Compl. ¶ 34; <u>see</u> <u>id.</u> ¶ 33.)  Such an allegation is sufficient to satisfy the second <u>Sciolino</u> element at this stage in the proceeding.

In regard to the fourth <u>Sciolino</u> element of falsity, the defendants have represented that the Police Department's records are not factually incorrect, but that they merely fail to indicate the outcome of the hearing, as opposed to incorrectly or falsely indicating that the charges were sustained against Hall. (<u>See</u> Defs.' Mem. Supp. Mot. Dismiss Am. Compl. at 4-5).  However, because the court must accept as true the allegations of the Amended Complaint when deciding the motion to dismiss, the fourth element is properly alleged at this time.  (<u>See</u> Am. Compl. ¶¶ 31, 32.)

Although the court has found that Hall has alleged facts to support the first, second, and fourth elements of <u>Sciolino</u>, the defendants further submit that Hall has failed to allege facts to support the third <u>Sciolino</u> element, <u>i.e.,</u> that defamatory

17

statements were made in conjunction with the employee's termination or significant demotion.  See 480 F.3d at 646.  In a case such as Hall's, when an employer makes public the reasons for an employee's demotion or termination, the liberty interest involved is "defined as 'that of being free from arbitrary restrictions upon the opportunity for other gainful employment. . . .'"  See Johnson v. Morris, 903 F.2d 996, 999 (4th Cir. 1990) (quoting Boston v. Webb, 783 F.2d 1163, 1166 (4th Cir. 1986)).  In Johnson, the Fourth Circuit also indicated that a suspended police officer "'cannot complain that he has been made unemployable; he remains employed.'" Id. (quoting Hershinow v. Bonamarte, 735 F.2d 264, 266 (7th Cir. 1984)).

Since Johnson, however, the Fourth Circuit has not always required the actual discharge of the employee, so long as the employee's demotion is so significant as to be "tantamount to an outright discharge." Ridpath v. Bd. of Governors Marshall Univ., 447 F.3d 292, 310 (4th Cir. 2006).  In Ridpath, the plaintiff suffered an involuntary transfer from his position in the university's athletics department to the position of Director of Judicial Programs.  Id. The Fourth Circuit found the plaintiff's "significant demotion to a position outside of his chosen field" to be sufficient to invoke procedural due process rights.  Id. at 310-12.  In doing so, the Fourth Circuit distinguished Johnson on the grounds that the plaintiff in Johnson suffered a demotion "within

18

the Virginia Department of Corrections, presumably with no change in line of work (as there was no allegation to the contrary)." Id. at 311 n.19. Similarly, in Ridpath, the Fourth Circuit cited with approval a Fifth Circuit case finding "no liberty interest was implicated where the plaintiff was only demoted from police corporal to patrolman." Id. (citing Moore v. Otero, 557 F.2d 435, 438 (5th Cir. 1977)). Thus, the Fourth Circuit has carved out a limited exception to Johnson's requirement of termination for cases in which the employee suffers a significant demotion, meaning a change in line of work, such that his transfer is "tantamount to an outright discharge." Id. at 310-12. Such is not the situation in the case at bar.[10]

Although Hall was suspended without pay pending the outcome of the grievance procedure, Hall has since been reinstated as a police officer for the City. Therefore, Hall has not suffered termination of employment. Similarly, Hall's transfer to the Records Bureau of

---

[10] Hall attempts to distinguish Johnson on the basis that the plaintiff in that case failed to take advantage of a name-clearing hearing that was offered to him. Despite that factual anomaly, courts in this circuit continue to approve of the reasoning set forth in Johnson. See, e.g., Diedrich v. City of Newport News, No. 4:04CV9 (E.D. Va. April 26, 2004) ("Even if the Plaintiff were to contend that his future career opportunities have been adversely affected by his transfer to the Records Division, it would not constitute a liberty interest. '[I]f that were a basis for claiming damages for a deprivation of liberty, . . . the federal courts would become the grievance machinery for public-sector employees.'" (quoting Johnson, 903 F.2d at 999)), aff'd, 109 Fed. Appx. 526 (4th Cir. 2004); see also Ridpath, 447 F.3d at 311 n.19 (discussed in text).

19

the Police Department cannot be considered a transfer "tantamount to outright discharge," as required by Ridpath.  The Fourth Circuit has indicated that a change in position from police corporal to patrolman does not qualify, see Ridpath, 447 F.3d at 311 n.19, and the court views Hall's intra-departmental transfer as being similarly insufficient.  See, e.g., id. at 311 n.17 (giving the hypothetical example of a transfer from police corporal to janitor as a qualifying transfer).  Because Hall remains employed by the City and his transfer to the Records Bureau of the Police Department is not tantamount to termination, Hall has failed to allege facts that would satisfy the third element of Sciolino.  Accordingly, the court **GRANTS** the defendants' motion to dismiss Count II.

## C. Count III: Assignment to the Records Bureau (Due Process-Property Interest)

Hall alleges that by prohibiting him from making arrests and by transferring him to a position in the Records Bureau of the Police Department that the defendants have deprived Hall of his property interest in his position as a police officer without due process of law, in violation of the Fifth and Fourteenth Amendments.  (See Am. Compl. ¶¶ 40-41.)  Nevertheless, the law of the Fourth Circuit does not support his assertion.  The Fourth Circuit has emphasized that "the constitutionally protected property interest in employment does not extend to the right to possess and retain a particular job or to perform particular

20

services." <u>Fields v. Durham</u>, 909 F.2d 94, 98 (4th Cir. 1990). So
long as an employer provides the employee with full compensation
due under the contract, there is no deprivation of the employee's
property right in employment. <u>See</u> <u>Royster v. Bd. of Trs. of</u>
<u>Anderson County Sch. Dist. No. Five</u>, 774 F.2d 618, 621 (4th Cir.
1985). Thus, loss of authority and responsibility, absent a
reduction in compensation, do not constitute a deprivation of a
plaintiff's property right in continued employment. <u>See, e.g.,</u>
<u>Echtenkamp v. Loudon County Pub. Schs.</u>, 263 F. Supp. 2d 1043, 1054
(E.D. Va. 2003).

Furthermore, under Newport News City Code Section 2-183, the
City explicitly maintains the "exclusive right" for its management
to "establish job duties, job descriptions and job requirements"
and "to assign and direct the work of employees," such that the
"transfer, assignment and retention of employees by the [C]ity is
not grievable." Indeed, Hall concedes that the City "has the right
to set his work assignments and duties and thus could place him in
a position, which would normally involve little use of police
powers." (Pl.'s Resp. Defs.' Mot. Dismiss Am. Compl. at 7.)
Although Hall contends that his transfer to the Records Bureau
involves more than simply controlling his work functions, the court
finds Hall's reasoning unpersuasive. <u>See</u> <u>Diedrich v. City of</u>
<u>Newport News</u>, No. 4:04CV9 (E.D. Va. April 26, 2004) (finding that
the plaintiff's "transfer to the Records Division and resulting

21

termination of 'police powers,' including arrest powers and the opportunity to perform off-duty employment" failed to state a due process claim upon which relief could be granted).[11]

As Hall continues to be employed by the City in the Police Department, and he has not alleged a decrease in compensation, his transfer to the Records Bureau does not constitute a deprivation of his property right to continued employment. Thus, the defendants' motion to dismiss Count III is **GRANTED**.[12]

---

[11] Hall attempts to distinguish <u>Diedrich</u> by citing <u>Zicca v. City of Hampton</u>, 240 Va. 468 (1990). In <u>Zicca</u>, a grievance panel specifically ordered that the City of Hampton return Zicca "to his former position as Golf Course Superintendent." <u>Id.</u> at 469. After one day, the City of Hampton then transferred Zicca to a temporary position at the City's Aerospace Park, after which Zicca was later transferred to a newly created position of maintenance manager. <u>Id.</u> Under those circumstances, counsel for the City stipulated during the implementation suit that Zicca "never actually went out to the golf course, never acted in the capacity of superintendent, and never set foot in the place and never carried out <u>any</u> of those functions." <u>Id.</u> at 470 (emphasis added). To the contrary, Hall has been reinstated to a position within the Police Department, albeit in the Records Bureau. While the court does not assert that <u>any</u> position within the Police Department, such as that of a sanitation or maintenance employee, would suffice to comply with the grievance panel's order of reinstatement, Hall's new position rightly constitutes a reassignment of job functions, as in <u>Diedrich</u>, as opposed to a transfer to an entirely new position, as in <u>Zicca</u>. Accordingly, Hall's reliance on <u>Zicca</u> is misplaced.

[12] As the court dismisses Count III of the Amended Complaint, the court does not address Hall's request to consider his transfer in position as an element of damages. (<u>See</u> Pl.'s Resp. Defs.' Mot. Dismiss Am. Compl. at 8.) Similarly, because the court has granted the defendants' motion to dismiss Counts I, II and III on other grounds, the court does not consider whether Hall has adequately pled the independent involvement of each individual defendant. (<u>See</u> Defs.' Mem. Supp. Mot. Dismiss Am. Compl. at 14.) Finally, because the issue has not been raised by either party, the court does not address whether any of the individual defendants had final

### V. Conclusion

For the foregoing reasons, the court **DENIES** the defendants' motion to dismiss for lack of jurisdiction and **GRANTS** the defendants' motion to dismiss Counts I, II, and III for failure to state a claim upon which relief can be granted. The plaintiff's Amended Complaint is therefore **DISMISSED**. The Clerk is **DIRECTED** to send a copy of this Opinion to counsel for the parties.

**IT IS SO ORDERED.**

/s/
Rebecca Beach Smith
United States District Judge

REBECCA BEACH SMITH
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia

April 30, 2010

---

policymaking authority sufficient to support § 1983 liability for the City. See, e.g., Crowley v. Prince George's County, Md., 890 F.2d 683, 686 (4th Cir. 1989) ("[T]he County Sheriff may have discretion to hire and fire employees without also being the county official responsible for establishing county employment policy"); cf. Monell v. Dep't of Soc. Servs. of the City of New York, 436 U.S. 658, 692-94 (1978) (finding a municipality is only liable for the acts of its employee if the municipality adopted a policy or custom pursuant to which the employee acted).