IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division


**CORY M. HALL,**

      **Plaintiff,**

v.                                                            Civil Action No. 4:09CV136

**CITY OF NEWPORT NEWS, et al.,**

      **Defendants.**

## BRIEF IN SUPPORT OF SUMMARY JUDGMENT

Defendants City of Newport News, James D. Fox, Joe Moore, Neil A. Morgan, and Randy Hildebrandt (collectively "Defendants"), by counsel, in support of their Summary Judgment, state as follows:

### I.     BACKGROUND AND OVERVIEW

This matter was previously before the Court on Defendants' Rule 12(b)(6) Motion to Dismiss (ECF. No. 12) Plaintiff's three count Amended Complaint alleging, *interalia*, a Fourteenth Amendment due process violation of a liberty interest incident to his termination of employment as a police officer.  By opinion dated May 12, 2010, this Court granted the motion to dismiss, holding that, although Hall was a patrol officer when he was terminated, upon his reinstatement his assignment to the Records Bureau was not a demotion tantamount to termination.  (ECF. No. 24 at 20.)  Hall timely appealed the dismissal of Counts I and II.  The Fourth Circuit Court of Appeals affirmed the dismissal of Count I but reversed and remanded Count II, holding that, for Rule 12(b)(6) purposes, Hall had stated a claim when he alleged that his assignment to a "civilian position" without arrest powers "made him something other than a

police officer," effectively excluding him from his trade or calling as a police officer. (EFC. No. 36, at 8.)

A police officer's power to make arrests is not a right contemplated by the Fourteenth Amendment and to deny that power does not invoke a liberty interest. In an attempt to bring his claim within a constitutional mandate, in Count II Hall asserts that Defendants have not given effect to a grievance panel decision and maintain false and stigmatizing records regarding disciplinary action which damage his reputation, adversely affecting his future employment, and which Defendants have or will likely make public. However, without regard to whether a job assignment implicates a liberty interest, Hall has no evidence that any Defendant has permitted inspection of or that there is a likelihood that prospective employers to whom he will apply, or the public at large, will inspect the file. For this and other reasons, the Court cannot grant the remedy Hall seeks and summary judgment is appropriate.

## II.     STATEMENT OF UNDISPUTED FACTS

1. Hall was hired as a Newport News Police Officer in 1999. He was Senior Patrol Officer when he was terminated for cause in November 2006 and was reinstated to the same rank in December 2008 with no reduction in pay. (Am. Compl. ¶¶ 1, 8, 17, 22; Ex. 30 Hall Dep. at 12.)

2. The individual defendants are the former City Manager, Randy Hildebrandt; the former Deputy City Manager and current City Manager, Neil A. Morgan; the Chief of Police, James D. Fox; and an Assistant Chief of Police, Joe Moore. (Am. Compl. ¶¶ 3-5, 10-13.)

3. In 2005 and 2006, arresting police officers were required to furnish to the Newport News Commonwealth's Attorney's office a "Commonwealth Package" which included

the arrest complaint, summons or warrant, the IBR Incident Report and a letter, signed by the officer, describing the circumstances of the arrest (the "arrest letter"). (Ex. No. 1.)

4. On June 29, 2006, Hall arrested Raphiel Coleman for trespassing. (Ex. No. 2.)

5. On June 30, 2006, Newport News police officer C. L. Cassidy reported to her supervisor, Sgt. R. A. Richardson, an incident involving the arrest of Coleman which she believed constituted excessive use of force by Hall and put the details of the event in a report of July 1, 2006. (Ex. No. 3.)

6. The Coleman complaint prompted an investigation by the Internal Affairs Division of the Newport News Police Department and charges were brought against Hall. (Ex. Nos. 4, 5.)

7. During the Coleman investigation, Hall denied the allegation of excessive use of force in a Use of Force Report and accompanying letter. (Ex. No. 6.)

8. Hall's explanation was not supported by the testimony of others. As a result, the charges of excessive use of force, improper procedure, and untruthfulness involving the Coleman arrest and administrative investigation, were substantiated. (Ex. No. 7.)

9. On November 9, 2006, Defendant Fox gave notice to Hall that the charges against him in the Coleman matter had been substantiated, which could result in his termination, and gave Hall the opportunity to respond before making a decision. (Ex. No. 8.)

10. While the Coleman matter was being investigated, a complaint was made about Hall by the Commonwealth's Attorney's office regarding improper procedure in the arrests of

Michael Brackens and Ryan Warrick which resulted in the dismissal of each case. According to the information from the Commonwealth Attorney, Hall's arrest letter was not presented until July 2006, one year after the arrest. In it Hall stated he did not arrest Brackens until after he found marijuana in the car. (Ex. No. 9.)

11. Internal Affairs conducted an investigation into Hall's handling of the Brackens and Warrick arrests, following which formal charges were brought against Hall. (Ex. Nos. 10-11.)

12. Hall arrested Brackens on July 9, 2005, and included the Sworn Criminal Complaint and IBR Incident Report in the Commonwealth Package. In each document Hall stated Brackens was arrested for trespassing and in a search incident to the arrest, he found marijuana. (Ex. Nos. 12, 13.)

13. During the Brackens investigation Hall stated he prepared the arrest letter on July 15, 2005, six days after Brackens arrest and made no changes to it of any kind. (Ex. No. 14; Ex. No. 15 excerpts from Hall's Nov. 7, 2006, interview.)

14. Data from a Newport News Police Department computer shows that the Brackens arrest letter was written on July 12, 2006, and back dated to July 15, 2005. (Ex. No. 16.)

15. Following his investigation into the Brackens and Warrick complaints, Lt. Riley of Internal Affairs recommended that charges of improper conduct, improper procedure and untruthfulness in the investigation be substantiated. (Ex. No. 17.)

16. On December 19, 2006, Fox gave notice to Hall that the charges in the Brackens and Warrick matters had been classified as substantiated which could result in the termination of

4

his employment and gave Hall an opportunity to respond before making a final decision. (Ex. No. 18.)

17. After meeting with Hall on November 17, 2006, and evaluating the facts in the Coleman matter, and after meeting with Hall on January 3, 2007, on the Brackens and Warrick matters, on January 16, 2007, Fox gave Hall notice that his employment with the department was terminated effective immediately. (Ex. No. 19.)

18. Hall filed a grievance of the Coleman and Brackens matters under the City's grievance procedure. A hearing was conducted in October 2007. In the Coleman matter, the grievance panel unanimously dismissed the charge of improper procedure and use of force, and dismissed the charge of untruthfulness by a 2 to 1 vote. In the Brackens matter, by a vote of 2 to 1, the panel dismissed the improper procedure charge as inappropriate, and upheld the untruthfulness charge but reduced it to a level II violation and reversed the termination. The panel further directed that Hall be reinstated but without back pay. (Am. Compl. Ex. A; Ex. 20.)

19. Hall was reinstated to the Newport News Police Department on December 22, 2008. (Am. Compl. ¶ 24.)

20. Before Hall was reinstated, Howard Gwynn, Newport News Commonwealth Attorney, notified Defendant Fox that the Commonwealth's Attorney's office could not ethically vouch for Hall's credibility and would not prosecute any charges in which Hall was a necessary or material witness. (Ex. No. 21.)

21. In light of the decision by the Commonwealth's Attorney, Defendant Fox informed Hall that he was prohibited from engaging in any criminal enforcement activity or initiating arrests, on or off duty. (Am. Compl. ¶ 44; Ex. No. 22)

22. Hall's personnel records in Internal Affairs contain letters from defendant Fox that the charges against Hall were substantiated which resulted in his termination. The same personnel files contain the decision of the grievance panel ordering Hall's reinstatement and dismissing the charges of untruthfulness. (Ex. 30 at 39, 42.)

23. Both before and after his reinstatement, Hall applied for positions as a law enforcement officer with several law enforcement agencies. In each of those applications, Hall explained the reason for his termination from the Newport News Police Department and provided the details of the charges including being untruthful. (Ex. 30 at 21-27; Ex. No. 23, p. 5.)

24. As a part of the applications with other law enforcement agencies, Hall signed a waiver authorizing the Newport News Police Department to release information regarding his employment. (Ex. 30 at 27; Ex. No. 24.)

25. No prospective employer to which Hall applied has reviewed any of Hall's employment records, nor has Internal Affairs released to prospective employers or made public the information regarding the Internal Affairs investigation or the termination of his employment, consistent with the department's standard operating procedure. (Affs. of Capt. Minkoff and Paul Haymes, Ex. Nos. 25, 26.)

26. Hall has made statements to news media which include the details of the charges and his termination. (Ex. Nos. 27, 28.)

27. Hall continues the annual state certification required to be a police officer. (Ex. 30 at 8.)

28. Since his reinstatement Hall has been promoted to Master Police Officer with a corresponding salary increase. (Ex. No. 29.)

### III. STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits the court to dismiss an action if the plaintiff fails to state a claim upon which relief can be granted. The function of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint. Neitzke v. Williams, 490 U.S. 319, 326-27 (1989). Although a complaint need not contain detailed factual allegations, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (Internal citation and footnote omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." Ashcroft v. Iqbal, 556 U.S. at 662, 678 (2009) (citing Twombly). Threadbare recitals of the elements of a cause of action supported by mere conclusory statements do not suffice. Twombly, 550 U.S. at 555. A complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." Id. at 570.

### IV. ARGUMENT

In Count II, Hall complains that the Newport News Police Department continues to maintain in his personnel file records which reflect that disciplinary charges brought against him

were substantiated even after a grievance panel "acquitted" him of those charges. (Am. Compl. ¶ 31.) Further, Hall says his personnel records do not reflect that he was acquitted of the charges, and the failure to give effect to the grievance panel decision denies him due process under the Fourteenth Amendment. (Am. Compl. ¶ 32.) He continues by asserting that the records are false and stigmatizing, and that defendants have furnished, and will likely disclose, the information to potential employers with whom he has unsuccessfully sought employment. (Am. Compl. ¶ 33.) Finally, he says maintaining and disclosing these records is the result of policies and orders of Defendants Fox and Moore, which have been ratified and confirmed by Defendants Hildebrandt and Morgan. (Am. Compl. 35.)

According to the Fourth Circuit Court of Appeals, relying on its decision in <u>Ridpath v. Board of Governors Marshall University</u>, 447 F.3d 292 (4th Cir. 2006), the allegations in Count II state a cause of action, except that Hall does not allege that he was denied a name-clearing hearing. Hall is not seeking a hearing, recognizing he has already had two. Rather, he is seeking restoration of law enforcement duties usually associated with being a police officer. However, because taking away arrest powers alone will not violate a liberty interest, to prevail, Hall " must allege (and ultimately prove) a likelihood that prospective employers (i.e., employers to whom he will apply) or the public at large will inspect the file" which contain the allegedly false and damaging charges." <u>Sciolino v. City of Newport News</u>, 480 F.3d 642, 650 (4th Cir. 2007).

It serves no purpose to restate in this brief the history of liberty interest cases, most especially <u>Bishop v. Wood</u>, 426 U.S. 341 (1976) and <u>Ledford v. Delancey</u>, 612 F.2d 883 (4th Cir. 1980). With the law regarding actual or likely disclosure of records established, it is sufficient to continue by examining Hall's burden of proof and his evidence of disclosure and other issues as expressed in <u>Sciolino</u>:

> To state this type of liberty interest claim under the Due Process Clause, a plaintiff must allege that the charges against him: (1) placed a stigma on his reputation; (2) were made public by the employer; (3) were made in conjunction with his termination or demotion; and (4) were false.

480 F.3d at 646 (citation omitted).

### A. <u>No Publication.</u>

It cannot be ignored that Hall was terminated in October 2006, reinstated in December 2008, and remains a Newport News Police Officer to the present day. To that extent, even if the City had disclosed the alleged false charges, it cannot be said it affected his employment, as he remains employed. <u>See Diedrich v. City of Newport News</u>, CA No. 4:04cv9 (E.D. Va. Apr. 26, 2004, aff'd, No. 04-1603, 109 F. App'x 526 (4th Cir. Sept. 14, 2004) (No liberty interest in claim that disclosure of discipline records made plaintiff unemployable when he was reinstated and remained employed.) <u>Id.</u>, slip op. at pp. 6,7.

At some point, Hall's disclosure claim must become stale. From the date of his termination to the present Hall cannot identify a single incident when a prospective employer inquired of Internal Affairs about his employment. Nor can he point to any policy or practice whereby the City is likely to disclose to a prospective employer anything other than the charges brought against him and the resulting decision of the grievance panel. <u>See</u> Haymes and Minkoff Affidavits (Ex. Nos. 25, 26.)

During the period between his termination and reinstatement, and after reinstatement, Hall made applications with several law enforcement agencies for a position as a law enforcement officer. In each of those applications, he responded to the question whether he had ever been terminated from such an agency and he gave the details of his termination including

9

the charge of being untruthful. See Ex. 23, Ex. 30 at 21-26. He also signed waivers authorizing the agency to make inquiry of the Newport News Police Department. (Ex. 30 at 27; Ex. No. 24.)

At his deposition, Hall was asked if he had any evidence to support the allegations in Count II that any prospective employer to which he had applied for a job reviewed the records in either the Police Department or Department of Human Resources. His response was he "may not have it physically;" "I don't have the documents;" "I don't have the physical evidence;" "I don't have an answer to that." (Ex. 30 at 42-45.)

Hall was asked to explain how the records could adversely affect his reputation for employment if they had not been disclosed to a prospective employer. His response was that because the records exist he had to disclose the reasons for his termination on all applications for employment. (Ex. 30 at 48.) However, he conceded that even if the records did not exist he would still have had to disclose the reasons for his termination on the application. (Id.)

Finally, he admitted that, other than the disclosure that he made in applications for employment, he had no evidence that any of the records from the Police Department had been disclosed to prospective employers. Id. He acknowledged that his allegations of disclosure of the records was based on his supposition that, because he signed a waiver, the records had been disclosed. (Ex. 30 at 51.)

In paragraph 34, of the Amended Complaint he alleges that, consistent with policy, the City has disclosed stigmatizing information to prospective employers. But when asked if he knew what the policy or practice was within the Police Department regarding public disclosure, or permitting prospective employers with signed waivers to review information about Newport News officers, he said he did not know. (Ex. 30 at 52.) Then in paragraph 35 he alleges that the

policy to disclose and maintain false and stigmatizing records, about which he admits he has no knowledge, is the result of orders imposed by Defendants Fox and Moore, and ratified by Defendants Hildebrandt and Morgan.  But at his deposition the only claim he asserted against Fox is that Fox did not expunge from his file the findings from the Internal Affairs investigations after the grievance panel dismissed or modified those findings.  (Ex. 30 at 53-54.)  He testified to the same effect as to Defendant Moore.  (Ex. 30 at 54-55.)  As to Defendants Hildebrandt and Morgan, Hall's allegations of wrong doing lie in the fact that he notified them that the grievance panel ordered his reinstatement but that he was not reinstated and they did nothing about it.  (Ex. 30. at 55.)

According to the affidavit by Paul W. Haymes, Commander of the Professional Standards Division of Internal Affairs (January 2007 to August 2008), representatives of prospective employers were not permitted to view physical files, even with a current waiver signed by an employee.  Rather, a professional standards employee would tell the representative if there were any internal affairs complaints and the disposition.  During Haymes' tour as commander of Internal Affairs no prospective employer made inquiry or sought review of Plaintiff's file.  (Ex. 25.)

The affidavit of Captain L. N. Minkoff, Haymes' successor and commander of the division until September 2012, is to the same effect, as no inquiries were made or review sought of plaintiff's files (Ex. 26.)

The Fourth Circuit has recognized that "a Fourteenth Amendment 'liberty interest' is implicated by public announcement of reasons for an employee's discharge." Sciolino, 480 F.3d at 645-46 (quoting Johnson v. Morris, 903 F.2d 996, 999 (4th Cir. 1990)). Such an interest arises

11

from a "combination of two distinct rights protected by the Fourteenth Amendment: (1) the liberty to engage in any of the common occupations of life… and (2) the right to due process where a person's good name, reputation, honor or integrity is at stake because of what the government is doing to him." Id. at 646.

Recognizing that the issue in this case is that if the charges against Hall were made public, Hall must prove a likelihood that prospective employers or the public at large will inspect the file. Id. According to the Fourth Circuit's decision in Sciolino, Hall must show either that the Defendants have a practice of releasing personnel files to all inquiring employers or that they release personnel files only to certain inquiring employers to whom an employee intends to apply. Id.

The only evidence before the Court is that the City has neither a practice of releasing personnel files to all inquiring employers nor a practice of releasing such files to certain employers to which an employee plans to apply. In fact, the City would release only limited information in an employee's file, if that employee has authorized a prospective employer to have access to such information. Hall signed waivers authorizing prospective employers to review his personnel file, but he is not required to prove that his file was actually made available. Id. It is significant to note that Hall has no evidence to reflect that Internal Affairs either received a request to review his file or that the file was actually reviewed. In fact, the City's evidence is that not only is it policy that the file could not be reviewed but that no request has been made to review the file.

Because plaintiff is unable to prove that the charges are likely to be made available to prospective employers or to the public, he has failed to establish an essential element of his

claim. Furthermore, this is not a case in which a former employee was forced to "choose between finding future employment and protecting his reputation by not applying for jobs (and thus not risking the release of the stigmatizing allegation)." Id. at 649. This is a case in which Hall was off the police force from January 2007 to the date of his reinstatement, December 2008. Since his reinstatement, Hall has been continually employed by the Newport News Police Department as a certified police officer.

**B. Hall Signed Waivers Authorizing Release of Information.**

Hall has testified that with each application for employment he signed a waiver authorizing Newport News to release information regarding his employment. (Ex. No. 24.) This constitutes a release of claims of denial of a liberty interest without regard to whether information had been released to prospective employers. In Harrell v. City of Gastonia, 392 F. App'x 197 (4th Cir. 2010) Harrell, a former probationary police officer on the Gastonia police force, resigned after an unfavorable evaluation which would have caused his dismissal. He applied to the Rocky Mount police department, signed a waiver authorizing Gastonia to release information and the unfavorable evaluation was released. He alleged the denial of a liberty interest when he was not hired by Rocky Mount. The district court granted summary judgment and the Fourth Circuit affirmed: "… this Authorization operates as a waiver and release of Harrell's claims related to the City's disclosure of Harrell's personnel information to Rocky Mount. …Thus, based on the Authorization, Harrell has waived and released any potential claim under § 1983 related to the Rocky Mount disclosure." Id. at 205-06.

**C. The Charges Against Hall Are Not False.**

The charges brought against Hall were, first, in the Coleman matter, improper procedure, excess use of force and untruthfulness in the arrest and in the investigation. Second, in the

Brackens and Warrick matters, improper procedures and untruthfulness in the investigation. Untruthfulness charges resulted in a finding of Level 4 misconduct justifying dismissal. In the Coleman matter, the grievance panel dismissed the charges as being "not appropriate." In the Brackens matter, the panel dismissed the misconduct charge as being "not appropriate," but upheld the Level 4 untruthfulness charge but reduced it to a Level 2 finding. The Panel ordered reinstatement but with no back pay or punitive relief as Hall had requested in his grievance request. See Ex. A attached to Complaint.

With regard to the charge of untruthfulness in an investigation in the Brackens matter, the Commonwealth's Attorney's office reported that the arrest letter from Hall was not included in the Commonwealth package after Brackens' arrest in July 2005. (Ex. No. 14.) When the Brackens case came to trial in 2006, Hall produced a letter dated July 15, 2005. (Ex. No. 15.) During the course of the internal affair investigation he was asked if this was the original letter and if he made any changes in it to any extent, to which he said he had not. Id. The investigating officers then produced a copy of the letter actually prepared by Hall on July 12, 2006, found on a department computer and back dated to July 15, 2005. (Ex. No. 16.) In his deposition, Hall admitted that he back dated the letter. (Ex. 30 at 64-66.)

**D.  Liability of Individual Defendants.**

**1.  No individual actions.**

In order for an individual to be personally or individually liable under §1983, acting under color of state law, an individual must have caused the deprivation of a federal right. Kentucky v. Graham, 473 U.S. 159, 165 (1985). As opposed to an official capacity suit, a personal liability suit is not predicated on a policy or custom. Hafer v. Melo, 502 U.S. 21, 25 (1991). As a threshold matter, it must be "affirmatively shown that the official charged acted

personally in the deprivation of the plaintiff's rights." Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985); Pendergrass v. Hodge, 53 F. Supp. 2d 838, 842 (E.D. Va. 1999). Facts must be alleged demonstrating that the individuals were personally involved, either directly or in a supervisory capacity, in depriving the plaintiff of the protected right, in order to be liable. Davis v. Dep't of Soc. Servs., 1991 WL 157258, at *5 (4th Cir. Aug. 19, 1991). Plaintiff must plead that each defendant has violated the constitution through their own actions. Ashcroft v. Iqbal, 556 U.S. at 676. Lawsuits against officials in their individual capacity "cannot succeed absent proof of some degree of personal involvement" in the claimed infringement. McDonald v. Dunning, 760 F. Supp. 1156, 1160 (E.D. Va. 1991). For example, in Ponton v. Newport News School Board, defendants named in the lawsuit were not liable to plaintiff in their individual capacities because plaintiff introduced no evidence indicating any conduct on their part to justify the imposition of personal liability. 632 F. Supp. 1056, 1068 (E.D. Va. 1986). The defendant who took specific action violating the plaintiff's constitutional right was found to be individually liable. Id. (Defendant who had a conference with plaintiff regarding the informal policy and urging her to alter her behavior was individually liable for these actions). However, another official was held liable merely due to an inference that he was one of the initiators of the entity's informal policy which was violated, and an implied notion that he was aware of the conference urging her to resign and therefore approved. Id.

Additionally, in order to impose supervisory liability on individuals, making them personally liable for the actions of their subordinates, there must be more than allegations of "failure adequately to supervise or control any conduct that directly caused the specific deprivation charged." Fisher v. Washington Metro. Area Transit Auth., 690 F.2d 1133, 1143 (4th Cir. 1982). A claim for supervisorial liability requires:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a persuasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative casual link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Smith v. Rector & Visitors of the Univ. of Va., 78 F. Supp. 2d 533, 541 (W.D. Va. 1999) (citing Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994)).

Plaintiff must plead that each defendant has violated the Constitution through their own actions. Ashcroft, 556 U.S. at 676. However, the Fourth Circuit has considered "supervisory indifference or tacit authorization of subordinates' misconduct" as conduct which may create supervisorial liability for the actions of subordinates. Slakan v. Porter, 737 F.2d 368, 372 (4th Cir. 1984).

  As a first consideration, Hall has failed to allege any individual conduct by any of the Defendants sufficient to prevail against a Rule 12(b)(6) motion to dismiss, much less against a motion for summary judgment. He asserts that the City's practice of releasing false and stigmatizing information about employees like himself is pursuant to orders and policies promulgated by Fox and Moore. However, he not only concedes that he knows of no publication or release of information about himself or other employees, he also concedes that he is unaware of any City or department policies prescribing such activities.

  Similarly, as to Hildebrandt and Morgan, supervisors of Fox and Moore, although he alleges they approved and ratified the policies and practices of Fox and Moore in releasing information about employees, his complaint at deposition was that, after the grievance panel ordered his reinstatement, he asked them to reinstate him and they took no action. That conduct, even if true, does not implicate a Fourteenth Amendment liberty interest because there is no allegation of direct conduct by an individual Defendant sufficient to support a Fourteenth Amendment claim. Therefore, the individual Defendants should be dismissed.

**2. Qualified Immunity.**

The individual Defendants have raised the defense of qualified immunity. To be entitled to that defense, the court must determine if the facts alleged show that a government official violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001); Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 301 (4th Cir. 2004); c.f., Pearson v. Callahan, 555 U.S. 223 (2009). If the court finds that no constitutional right was violated, the court need not inquire further. Id. If a violation of a constitutional right is shown, the court must determine if the right was clearly established at the time of the alleged violation to decide whether the defense is viable.

If refusing to grant unauthorized access to the employee files, or not releasing personnel information to the public, satisfies due process, then Hall received all the due process to which he is entitled and there was no constitutional violation. Thus the inquiry should go no further.

However, using Bishop, Ledford and Sciolino as guides, accepting as true the allegations in Count II, it was not clearly established in October 2007 that, "[i]f prospective employers are likely to see the stigmatizing allegations…", it would implicate a liberty interest. Sciolino, 480 F.3d at 649. (emphasis added) If not, then qualified immunity is a good defense.

Plaintiff's claim of Constitutional violation for release of stigmatizing information was not well-established in the summer and early fall of 2006 when the investigation and termination occurred. In fact, in Sciolino, the parties argued over the application of two potentially controlling authorities. The Fourth Circuit, however, concluded that neither case provided the rule of decision in the matter and instead looked to the law of other federal circuit courts, which was itself in conflict, to locate the appropriate standard governing plaintiff's claim. 480 F.3d at 648. ("Not only do neither Bishop nor Ledford resolve the question before us, but also the cases

17

from our sister circuits articulate varying standards as to the meaning of public disclosure.") Id. The Sciolino decision was issued March 2007, three months after Hall was terminated.

Judge Wilkinson dissented from the holding in Sciolino. In his dissent, Judge Wilkinson first acknowledged that the circuits are split on the existence of a claim where a plaintiff alleges merely the likelihood of dissemination of material and not the actual dissemination of the material. Id. at 654-55 (discussing the various approaches of the federal circuit courts and stating as follows: "There is at least one thing upon which the majority and I can agree: The circuits are split as to whether stigmatizing allegations can deprive a former government employee of a constitutional liberty interest before the allegations are disseminated to prospective employers or others.") And Judge Wilkinson himself concluded that without any allegation or proof of actual dissemination, plaintiff failed to state a claim for a constitutional violation. Id. at 653-54.

In light of the murkiness of the standard in this area – which included not only a circuit split but a split among the panel of judges at the Fourth Circuit on the appeal, there is recognition of the evolving state of the law, this Court should find that qualified immunity protects individual defendants from individual liability and should grant motion for summary judgment.

## V. CONCLUSION

Plaintiff has no evidence to prove that defendants have or are likely to disclose his disciplinary files and thus cannot establish a violation of a liberty interest. The allegations of untruthfulness are not false. The individual defendants are protected from suit by qualified immunity. The court should grant summary judgment to the defendants.

CITY OF NEWPORT NEWS, JAMES D. FOX, JOE MOORE, NEIL A. MORGAN, AND RANDY HILDEBRANDT

By: _____/s/_____
Stanley G. Barr, Jr. (VSB No. 7224)
sgbarr@kaufcan.com
R. Johan Conrod, Jr. (VSB No. 46765)
rjconrod@kaufcan.com
KAUFMAN & CANOLES, P. C.
Post Office Box 3037
Norfolk, VA 23514
(757) 624-3000
(757) 624-3169 Facsimile

*Counsel for Defendants City of Newport News, James D. Fox, Neil A. Morgan, and Randy Hildebrandt*

19

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing will be delivered by hand and is being filed with the Court's Electronic Filing System this 12th of December 2012, which will send a Notice of Electronic Filing (NEF) to the following user:

>Kevin P. Shea, Esq.
>kevinpshea@justice.com
>34 West Queens Way
>Hampton, VA 23669
>(757) 727-7767
>
>*Counsel for Plaintiff Cory M. Hall*

and delivered by hand only to:

>Oldric J. LaBell, Esquire
>121 Selden Road
>Newport News, VA  23606
>
>*Counsel for Plaintiff Cory M. Hall*

>By: _____/s/_____
>Stanley G. Barr, Jr. (VSB No. 7224)
>sgbarr@kaufcan.com
>R. Johan Conrod, Jr. (VSB No. 46765)
>rjconrod@kaufcan.com
>KAUFMAN & CANOLES, P. C.
>Post Office Box 3037
>Norfolk, VA 23514
>(757) 624-3000
>(757) 624-3169 Facsimile
>*Counsel for Defendants City of Newport News, James D. Fox, Neil A. Morgan, and Randy Hildebrandt*

11950814v9