UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division



FILED

FEB - 6 2013

CLERK, US DISTRICT COURT
NORFOLK, VA

CORY M. HALL,

        Plaintiff,

v.

                           ACTION NO. 4:09cv136

CITY OF NEWPORT NEWS,

JAMES D. FOX, CHIEF OF POLICE,
OFFICIALLY AND INDIVIDUALLY,

JOE MOORE, ASSISTANT CHIEF OF POLICE,
OFFICIALLY AND INDIVIDUALLY,

NEIL A. MORGAN, ASSISTANT CITY MANAGER/ACTING CITY MANAGER,
OFFICIALLY AND INDIVIDUALLY,

AND RANDY HILDEBRANDT, FORMER CITY MANAGER,
OFFICIALLY AND INDIVIDUALLY,

        Defendants.

## OPINION

This matter comes before the court on the Motion for
Summary Judgment, filed by the City of Newport News, James D.
Fox, Randy Hildebrant, Joe Moore, and Neil A. Morgan
(collectively "Defendants") on December 12, 2012, along with an
accompanying Memorandum in Support. Cory M. Hall ("Hall") filed
his Response to the Motion for Summary Judgment ("Response") on
December 26, 2012, to which the Defendants replied on
January 2, 2013. The matter is now ripe for review. For the

reasons discussed below, the court **DENIES** in part and **GRANTS** in part the Defendants' Motion for Summary Judgment.

## I.    Factual and Procedural History

On July 6, 1999, Defendant City of Newport News (the "City") hired Hall to serve as a police officer in the Newport News City Police Department (the "Police Department"). Am. Compl. ¶ 8. On or about November 2006, Defendant James D. Fox ("Fox"), the Chief of Police, discharged Hall from his position based upon the following disciplinary charges: improper procedure, untruthfulness during the course of an investigation, excessive use of force, and improper/unlawful arrest. Id. ¶ 17. In response, Hall initiated the City's grievance procedure to appeal his discharge. Id. ¶ 18.

In October 2007, a grievance panel conducted a hearing and on October 11, 2007, issued a decision dismissing three of the four charges against Hall and reducing the final charge from level IV misconduct to level II misconduct. Mem. Supp. Mot. Summ. J. Ex. 20. The grievance panel directed that Hall be reinstated as a police officer, but specified that he not receive back pay. Id.

The grievance panel's initial decision identified two of the charges as arising from "the Brackens case," which involved allegations of untruthfulness. Id. Exs. 16-19. While the panel dismissed one of the "Brackens" charges completely, it only

2

reduced the level of the other, and it did not specify which of the charges pertained particularly to Hall's alleged untruthfulness. Id. Ex. 20. On November 5, 2007, in response to the City's October 18, 2007, request to remand the case to the panel for further consideration, the panel issued a lengthier, more thorough opinion setting forth the panel's reasoning behind its decision. Resp. Mot. Summ. J. Ex. 2. Of particular relevance, the panel explained that it had reduced the level IV "Brackens" charge to level II because it did not believe that Hall had been untruthful in the Brackens incidents. Id. at 4-6. It further indicated that "the only part of this offense which was proven against Hall was his failure to properly manage documentation of his police file in the Brackens arrest." Id. at 6.

After months passed without Hall's reinstatement, Hall instituted a proceeding in the Circuit Court for the City of Newport News on April 23, 2008, seeking implementation of the grievance panel's decision ordering his reinstatement. Am. Compl. ¶ 26. On September 23, 2008, the circuit court issued a final order granting Hall's reinstatement. Resp. Mot. Summ. J. Ex. 3. Even after the final order of the circuit court, however, the City did not immediately reinstate Hall, who then filed a Motion to Compel. Am. Compl. ¶ 28. After a hearing was held by the circuit court on that motion in December 2008, the

City finally allowed Hall to return to work on December 22, 2008. Id. ¶¶ 24, 28. From the time of his discharge until when he returned to work, Hall received no salary or employee benefits from the City. Id. ¶ 29.

Upon returning to work, Fox wrote a letter prohibiting Hall from making any arrests or exercising his police powers, and Hall was assigned to a civilian position in the Police Department's Records Bureau. Id. ¶¶ 37, 44. According to Hall, the Police Department's personnel records have not been "amended to show his acquittal of the untruthfulness charges," and therefore the contents of the record create the false impression that Hall was found guilty of the untruthfulness charge. Resp. Mot. Summ. J. at 8–9. The Defendants contest this assertion, maintaining that Hall's personnel file does "contain the decision of the grievance panel ordering Hall's reinstatement and dismissing the charges of untruthfulness." Mem. Supp. Mot. Summ. J. at 6.

On October 9, 2009, Hall filed a Complaint, pursuant to 42 U.S.C. § 1983, against the City of Newport News; the former City Manager, Ryan Hildebrandt; the former Deputy City Manager and current City Manager, Neil A. Morgan; the Chief of Police, James D. Fox; and Assistant Chief of Police, Joe Moore.[1] Hall alleged

---

[1] Hall's Complaint and Amended Complaint name the individual Defendants "Officially and Individually." The court will treat

4

that the Defendants have deprived him of liberty and property without due process of law, in violation of the Fifth and Fourteenth Amendments to the United States Constitution. Hall filed an Amended Complaint on February 8, 2010. On March 1, 2010, the Defendants filed a Motion to Dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief could be granted. The court partially granted the Defendants' Motion on April 30, 2010, dismissing all three counts of the Amended Complaint for failure to state a claim.

On June 9, 2010, Hall filed a Notice of Appeal of the court's April 30, 2010, Order. On appeal, Hall challenged only the dismissal of Counts I and II of the Amended Complaint; he "abandoned any challenge as to the dismissal of Count III." Hall v. City of Newport News, 469 F. App'x 259, 261 n.1 (4th Cir. 2012). In an opinion dated March 14, 2012, the Fourth Circuit affirmed this court's dismissal of Count I but reversed the dismissal of Count II. Id. at 263. On May 29, 2012, the Fourth Circuit's judgment of March 14, 2012, took effect upon the Fourth Circuit's issuance of the formal mandate, at which time the case was reopened in this court. The Defendants filed an Answer to the Amended Complaint on June 18, 2012, and now

the official-capacity claims against the individual Defendants as claims against the City. See Ky. v. Graham, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."); Brandon v. Holt, 469 U.S. 464, 471-472 (1985).

5

move the court to grant summary judgment in their favor on Count II, the only remaining count of the Amended Complaint. Hall moved for a hearing on the Motion for Summary Judgment on January 10, 2013.[2]

## II.    **Summary Judgment Standard**

Summary judgment under Rule 56 is appropriate when the court, viewing the record as a whole and in the light most favorable to the nonmoving party, finds there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-50 (1986). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. A court should grant summary judgment if the nonmoving party, after adequate time for discovery, has failed to establish the existence of an essential element of that party's case, on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

---

[2] After full examination of the briefs and the record, the court has determined that a hearing is unnecessary, as the facts and legal arguments are adequately presented, and the decisional process would not be aided significantly by oral argument. See Fed. R. Civ. P. 78(b); E.D. Va. Loc. Civ. R. 7(J). Accordingly, the Motion for a Hearing is **DENIED**.

In essence, the nonmovant must present "evidence on which the [trier of fact] could reasonably find" for the nonmoving party. Anderson, 477 U.S. at 252. To defeat a motion for summary judgment, the nonmoving party must go beyond the facts alleged in the pleadings, instead relying upon affidavits, depositions, or other evidence to show a genuine issue for trial. See Celotex, 477 U.S. at 324. A party opposing a motion for summary judgment may not rest on the pleadings alone, but must instead "show that specific, material facts exist that give rise to a genuine triable issue." Hagan v. McNallen (In re McNallen), 62 F.3d 619, 623-24 (4th Cir. 1995). Conclusory statements, without specific evidentiary support, do not suffice, Causey v. Balog, 162 F.3d 795, 802 (4th Cir. 1998), nor does "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position," Anderson, 477 U.S. at 252. Rather, "there must be evidence on which the jury could reasonably find for the plaintiff." Id.

### III.    Analysis

#### A. Protected Liberty Interest

Hall alleges that the Police Department's personnel records do not reflect that he was acquitted of the untruthfulness charge, and therefore the City has violated his liberty interest in his occupation and reputation under the Due Process Clause of the Fourteenth Amendment. Am. Compl. ¶¶ 31-32; Resp. Mot. Summ.

J. at 8-9.  The Due Process Clause protects a public employee's liberty interest in the combination of his reputation and his choice of occupation.  See Paul v. Davis, 424 U.S. 693, 701 (1976).  To prevail on this type of liberty interest claim under the Due Process Clause, a plaintiff must prove "that the charges against him: (1) placed a stigma on his reputation; (2) were made public by the employer; (3) were made in conjunction with his termination or demotion; and (4) were false." Sciolino v. City of Newport News, 480 F.3d 642, 646 (4th Cir. 2007).  To survive the Motion for Summary Judgment, Hall must present "evidence on which the jury could reasonably find" that each of these elements has been met.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  The court will consider each element in turn.

### 1. Stigma

A charge by an employer of an employee's dishonesty satisfies the stigma element.  See Sciolino, 480 F.3d at 646 n.2.  The charges before the grievance panel included, inter alia, a charge of "untruthfulness during an internal investigation." Mem. Supp. Mot. Summ. J. Ex. 18.  Thus, inaccurate records indicating that such a charge had been sustained would satisfy the stigma element.  See id. ¶ 31.[3]

---

[3] Hall's bare allegation that his personnel records do not reflect that he was acquitted of the untruthfulness charge would

8

## 2. Made Public

A plaintiff may satisfy the publication element by proving either actual dissemination of the charges to prospective employers or a likelihood of dissemination of the false charges to potential employers. *Sciolino*, 480 F.3d at 648 n.4, 650.[4] Hall alleges that "prospective employers have received and it is probable they will receive information concerning [Hall's] disciplinary history and records." Resp. Mot. Summ. J. at 8. The Defendants dispute this allegation, claiming that no prospective employer to which Hall has applied has inspected Hall's personnel records and that the Police Department has not released any information regarding the investigation of Hall or his termination of employment. Mem. Supp. Mot. Summ. J. at 6.

---

be insufficient to sustain his claim at the summary judgment stage. Hall, however, has offered evidence from which a jury could reasonably find that his personnel record is incomplete, and thus creates the impression that he was found guilty of the untruthfulness charge. See infra Part III.A.4.

[4] In *Sciolino*, at issue were the circumstances in which the presence of false charges in a personnel file gives rise to a liberty interest claim under the Due Process Clause. As such, the rule in *Sciolino* is formulated in terms of the likelihood that prospective employers will "inspect the file." A broader reading of *Sciolino* and other Fourth Circuit cases indicates that the rule extends to the employer's dissemination of information more generally and is not limited just to dissemination through the physical inspection of personnel files. See *Sciolino*, 480 F.3d at 650; *Ledford v. Delancey*, 612 F.2d 883, 887 (4th Cir. 1980) (finding an allegation "that certain false information has been circulated and will continue to be circulated to prospective employers" sufficient to satisfy the publication prong).

Each party has put forward evidence and argument supporting its position. Because there are unresolved factual questions, summary judgment is not appropriate.

Hall offers evidence on which a jury could reasonably find both actual dissemination and a likelihood of future dissemination. Hall claims that he applied to at least seven law enforcement agencies and furnished to each of these agencies an authorization to release information from his personnel records. Resp. Mot. Summ. J. Ex. 1 ¶ 4.[5] Hall received personal

---

[5] Relying on Harrell v. City of Gastonia, 392 F. App'x 197 (4th Cir. 2010), the Defendants contend that by signing such authorizations Hall waived and released his claims related to the City's disclosure of information to these prospective employers. Mem. Supp. Mot. Summ. J. at 13. For a release of liability to be a valid waiver of a constitutional right, it must be knowing and voluntary, and "must not undermine the relevant public interest." Lake James Cmty. Volunteer Fire Dep't v. Burke Cnty., 149 F.3d 277, 280 (4th Cir. 1998). In Harrell, the employee signed a waiver explicitly releasing the plaintiff's former employer from civil or criminal liability for furnishing all available information regarding the employee. 392 F. App'x at 205. The Fourth Circuit held that this release operated as a waiver of the plaintiff's § 1983 claim related to the disclosure of information to the entity to which the plaintiff had authorized his former employer to make the disclosure. In Harrell, the disclosure of the allegedly false information occurred prior to the name-clearing hearing but after the plaintiff filed his § 1983 suit. Id. The Fourth Circuit found that the plaintiff knew both that his file contained the information he alleged was false and that he had a potential § 1983 claim based on the disclosure of information, and thus held that his waiver was knowing and voluntary. Id. at 205-06. In this case, however, the alleged disclosure occurred or could occur after the grievance panel had issued its decision and its lengthier written opinion. When Hall signed the authorization releasing Newport News from liability, he arguably believed he was consenting to disclosure of his complete record,

interviews with six of these agencies. Id. at ¶ 5. Hall points to the Police Department's policy to provide information about employee police officers to background investigators who possess a release or waiver signed by the employee about whom information is sought. Resp. Mot. Summ. J. Exs. 7, 11 & 12. Hall argues that this policy, combined with Hall's job applications and accompanying signed releases, demonstrates a likelihood that information from his personnel file has been or will be disseminated to prospective employers. Resp. Mot. Summ. J. at 4-5, 8. Moreover, Hall offers evidence demonstrating that the Police Department has provided information regarding the charges against him to at least one prospective employer. Resp. Mot. Summ. J. Ex. 5.

The Defendants cite the affidavits of one former and one current captain of the Police Department, both of whom state that there have been no requests for information about Hall and that no information about Hall has been released to the public. Mem. Supp. Mot. Summ. J. Exs. 25 & 26. Hall has offered evidence refuting the contention that no information about Hall has been released. Resp. Mot. Summ. J. Ex. 5 (indicating that the Albemarle County Police Department received an email from

---

including his acquittal of the untruthfulness charge. See supra note 3; infra Part III.A.4. Therefore, he cannot be said to have knowingly and voluntarily waived his claim based on the disclosure of incomplete or inaccurate information.

Sergeant Olson of the Newport News Police Department regarding the charges against Hall). Moreover, Hall need not prove the personnel information was actually disseminated; likelihood of dissemination will suffice. Sciolino, 480 F.3d at 650. Because Hall has produced some evidence from which the jury could reasonably find a likelihood of dissemination exists, summary judgment is inappropriate.

### 3. Termination or Demotion

To satisfy the third Sciolino prong, a plaintiff must prove that the stigmatizing remarks were "'made in the course of a discharge or a significant demotion.'" Ridpath v. Bd. of Governors Marshall Univ., 447 F.3d 292, 309 (4th Cir. 2006) (quoting Stone v. Univ. Md. Med Sys. Corp., 855 F.2d 167, 172 n.5 (4th Cir. 1988)). For a demotion to be significant, the new position must be so far beneath the original position that the employee is "'effectively excluded from one's trade or calling as by being thrown out on the street.'" Id. at 314 (quoting Lawson v. Sheriff of Timmpecanoe Cnty., 725 F.2d 1136, 1139 (7th Cir. 1984)). Hall alleges that after his reinstatement to the Police Department he was assigned to the Records Bureau, and was prohibited from engaging in criminal enforcement activity and from making arrests. In considering these facts on appeal, the Fourth Circuit held that "Hall's reinstated position within the Department effectively excludes him from his trade or calling as

12

a police officer," and thus qualifies as a "significant demotion." Hall v. City of Newport News, 469 F. App'x 259, 263 (4th Cir. 2012). Given that the Defendants do not dispute these facts, Mem. Supp. Mot. Summ. J. at 1 & ¶ 21, and that the evidence supports the facts, see Resp. Mot. Summ. J. Exs. 4 & 5, summary judgment is, therefore, inappropriate.

### 4. Falsity

Finally, Hall must prove that the information at issue is false. Sciolino, 480 F.3d at 646. Hall has alleged that the Police Department's personnel records create the false impression that he was found guilty of the untruthfulness charge because the records do not reflect that he was acquitted of the untruthfulness charges. Resp. Mot. Summ. J. at 8-9. The Defendants contend that the grievance panel decision "is indisputably a part of Hall's personnel file." Rebuttal Br. Mot. Summ. J. at 6. As Hall will bear the burden of proving this element at trial, he likewise "bears the burden of production under Fed. R. Civ. P. 56 to 'designate specific facts showing that there is a genuine issue for trial.'" Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)). Hall has met this burden.

Hall has offered evidence from which a jury could reasonably find that his personnel records create the false impression that Hall was found guilty of untruthfulness. In a

13

sworn affidavit, Hall alleges that while he saw the front page of the October 11, 2007, grievance panel decision in his personnel file, the document was "loosely lodged in the rear" of the file, "had no filing stamp and no holes," and there was no indication that "it was an official part of the file." Resp. Mot. Summ. J. Ex. 1 at 1.[6] According to Hall, the "full" grievance panel decision was not in the file. Id. Hall also offers evidence that arguably demonstrates that at least one prospective employer has concluded from the information it received from the Police Department that the untruthfulness charge against Hall was sustained, which further supports his contention that the record does not contain the full grievance panel opinion. See Resp. Mot. Summ. J. Ex. 5 at 3 (noting an Albemarle Police Department Lieutenant's statement regarding Hall's background investigation that "[a] finding of untruthfulness during the background investigation precludes the applicant from continuing in the process").

---

[6] The Defendants point to Hall's deposition, in which he admitted to seeing a copy of the grievance panel decision in his personnel records maintained by the Internal Affairs Division of the Police Department. Mem. Supp. Mot. Summ. J. Ex 30 at 39, 42. In response, Hall maintains that he saw only one page of the grievance panel decision in his personnel records, and asserts it is unclear whether even this portion of the decision was officially part of the file. Resp. Mot. Summ. J. at 8. It is for the jury to determine how to weigh these potentially conflicting pieces of evidence and to assess Hall's credibility.

The grievance panel's October 11, 2007, decision did not indicate that Hall was absolved of the untruthfulness charge; it merely showed that the level IV misconduct charge from the Brackens case was reduced to level II misconduct. Resp. Mot. Summ. J. Ex. 2. Only by examining the grievance panel's November 5, 2007, opinion would one know that the panel acquitted Hall of all charges of untruthfulness. Id. Therefore, even if Hall's personnel file contained the panel's decision of October 11, 2007, a jury could nonetheless reasonably conclude that the records conveyed that the untruthfulness charge had been sustained if the November 5, 2007, opinion were omitted from the file. See supra note 3.

Hall has presented evidence showing that there remains a genuine triable issue as to whether the Police Department's records and the information it has otherwise allegedly disseminated to prospective employers have created the false impression that the untruthfulness charges against Hall were sustained. Because Hall has presented evidence from which the jury could reasonably conclude that all of the Sciolino elements have been met, dismissal of Hall's liberty interest claim against the City under the Due Process Clause is not proper at this juncture.

## B. Remedy

In his Amended Complaint, Hall seeks five million dollars ($5,000,000) in damages, court costs, attorney's fees, and appropriate equitable relief, including an order correcting his personnel records. Am. Compl. at 10. Citing <u>Harrell v. City of Gastonia</u>, 392 F. App'x 197 (4th Cir. 2010), the Defendants argue that even if Hall can prove a liberty interest deprivation, his only remedy is a name-clearing hearing, and since Hall has already had a name-clearing hearing, the court cannot grant the remedy Hall seeks. <u>See</u> Mem. Supp. Mot. Summ J. at 8; Rebuttal Br. Mot. Summ. J. at 6-7.

Hall does not dispute the Defendants' characterization of the City's grievance panel process as a name-clearing hearing, but asserts that the Police Department's "failure to give effect to the grievance panel decision denies him . . . his right to due process." Am. Compl. ¶ 32. Due process requires "the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" <u>Mathews v. Eldridge</u>, 424 U.S. 319, 333 (1976) (quoting <u>Armstrong v. Manzo</u>, 380 U.S. 545, 552 (1965)). Failure to include the grievance panel's decision and opinion in Hall's personnel record vitiates the grievance panel procedure; it amounts to a denial of the opportunity to be meaningfully heard and thus may give rise to a due process violation.

The Defendants are correct that Hall is not entitled to have the information related to his charges removed from his record. See Harrell, 392 F. App'x at 206 (holding that due process did not entitle the plaintiff to have information regarding the reasons for his suspension and termination removed from his personnel file after a name-clearing hearing). However, this does not appear to be the remedy Hall seeks. Rather, it is the court's understanding that Hall aims to have his personnel file updated to include the full grievance panel decision and opinion reflecting his acquittal of the untruthfulness charges. Am. Compl. at 10. Accordingly, Hall seeks a remedy that is available under the Due Process Clause, and summary judgment is not proper.

## IV.    Liability of Individual Defendants in Their Personal Capacities

The Defendants argue that Defendants Hildebrandt, Morgan, Fox, and Moore cannot be held individually liable because Hall has failed to allege any actionable individual conduct by these defendants, and because qualified immunity shields them from liability. Mem. Supp. Mot. Summ. J. at 14-18.

To sustain individual liability under § 1983, the plaintiff must "affirmatively show[] that the official charged acted personally in the deprivation of the plaintiff's rights." Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985) (internal

17

citations omitted). Section 1983 liability is personal in nature, and the doctrine of respondeat superior is generally inapplicable to actions brought under the statute. Monell v. Dept. of Soc. Servs., 436 U.S. 658, 694 (1978); Lopez v. Robinson, 914 F.2d 486, 494 (4th Cir. 1990). Rather, to establish individual liability for civil rights violations, a plaintiff must prove that the defendant (1) personally violated a specific right under federal law; (2) implemented an official policy which resulted in a constitutional violation; or (3) tacitly authorized or demonstrated deliberate indifference to the unlawful conduct of subordinates. See Gaston v. Taylor, 918 F.2d 25, 29 (4th Cir. 1990), vacated on other grounds on reh'g, 946 F.2d 340 (4th Cir. 1991); Slakan v. Porter, 737 F.2d 368, 372-73 (4th Cir. 1984), cert. denied, 470 U.S. 1035 (1985); Fisher v. Wash. Metro. Area Transit Auth., 690 F.2d 1133, 1142-43 (4th Cir. 1982).

With regard to the implementation of an official policy, it is not enough that the conduct was "done in effectuation of a general policy" for which the defendant was responsible. Fisher, 690 F.2d at 1143. Instead, a defendant may be individually liable only where the evidence shows that conduct directly causing the specific deprivation "was done to effectuate an official policy or custom." Id. Moreover, "failure adequately to supervise or control any conduct that

18

directly caused the specific deprivation charged" does not give rise to individual liability.  Id.

To demonstrate individual liability based on the unlawful conduct of a defendant's subordinates, the plaintiff "assumes a heavy burden of proof," and must provide an "independent basis" for a finding of deliberate indifference or tacit authorization, such as "continued inaction in the face of documented widespread abuses."  Slakan, 737 F.2d at 373. The plaintiff "cannot satisfy his burden of proof by pointing to a single incident or isolated incidents."  Id.

To support his claim against the individual Defendants in this case, Hall alleges the following:

> The maintenance and disclosure to prospective employers of false and stigmatizing information concerning the Plaintiff in the files and records of the City Police Department is the result of the orders and policies imposed by the Defendants James D. Fox and Joe Moore, which policies and procedures were ratified and confirmed by the Defendants Randy Hildebrandt and Neil Morgan.

Am. Compl. ¶ 35.  Hall offers as evidence the Police Department's Standard Operating Procedure, which Fox signed into effect.  Resp. Mot. Summ. J. Ex. 7.  Hall argues that a likelihood of dissemination exists in this case because the City's written policy permits the release of information to background investigators regarding the classification of

19

complaints against employees and the findings regarding such complaints. Id. at 3-4; (citing Exs. 7, 11 & 12).

The release of information to Hall's potential employers could well have been, or may be done, in effectuation of the Police Department's general policy regarding the release of information to background investigators. The deprivation presently before the court, however, involves more narrowly the dissemination of false or inaccurate information to prospective employers. Hall has presented no evidence to support a determination that the policy Fox signed into effect provides for the dissemination of inaccurate or false information. Thus, the specific deprivation claimed by Hall--the release of false or inaccurate information--was not done to effectuate a policy chargeable to Fox. See Fisher, 690 F.2d at 1142-1143.

In deposition testimony, Hall asserted that Fox's individual liability stems from his responsibility as Chief-of-Police "to make sure that our agency is functioning the way it's supposed to be," which thus makes Fox responsible for the maintenance of inaccurate files. Mem. Supp. Mot. Summ. J. Ex. 30 at 53. Hall stated that Moore "was the person in charge" at the time of the grievance panel hearing, and thus bore responsibility for ensuring accurate files were maintained. Id. at 54. Hall further alleged that he informed Hildebrandt and Morgan that he was not reinstated to his position after the

grievance panel ruled in his favor, and they "chose to do nothing to assist in the enforcement of [the grievance] procedure." Id. at 55.[7]

The statements regarding Fox and Moore do not give rise to individual liability. The failure to correct the personnel records would only constitute personal conduct by Fox and Moore, if they were personally responsible for maintaining the personnel files. Hall has introduced no evidence demonstrating that Fox's and Moore's duties included maintaining personnel files. Nor can Fox or Moore be held liable under a simple theory of respondeat superior given their elevated positions within the Police Department. Monell, 436 U.S. at 694; Lopez, 914 F.2d at 494. And, Hall has not presented evidence indicating that Fox or Moore tacitly authorized or demonstrated deliberate indifference to the actual or potential dissemination of inaccurate information. Although Hall's evidence suggests that information was released to one potential employer in violation of this policy, see Resp. Mot. Summ. J. Exs. 5 & 7, this is a single incident, not "continued inaction in the face of documented widespread abuses." Slakan, 737 F.2d at 373.

---

[7] This allegation primarily relates to Count III, which is no longer before the court, as Hall did not pursue this court's dismissal of the claim on appeal. Hall v. City of Newport News, 469 F. App'x 259, 261 n.1 (4th Cir. 2012).

The statements regarding Hildebrandt and Morgan do not demonstrate any involvement with the maintenance of inaccurate personnel files or the dissemination of false information. Rather, they pertain only to the Police Department's failure to reinstate Hall to his previous position after the grievance panel decision, a charge which is distinct from the liberty interest claim under the Due Process Clause presently before the court. See Mem. Supp. Mot. Summ. J. Ex 30 at 55.[8] Hall offers no evidence to demonstrate that Hildebrandt or Morgan personally violated a specific right under federal law or tacitly authorized or demonstrated deliberate indifference to the unlawful conduct of subordinates. Gaston, 918 F.2d at 29; Slakan, 737 F.2d at 372-73.

For the reasons stated above, Hall has failed to offer evidence from which a jury could reasonably find the Defendants Fox, Moore, Morgan, and Hildebrandt individually liable for the conduct giving rise to Hall's liberty interest claim under the Due Process Clause. Accordingly, the court **GRANTS** the Summary Judgment Motion with respect to the individual capacity claims against Defendants Fox, Moore, Morgan, and Hildebrandt.[9]

---

[8] See supra note 7 and accompanying text.

[9] Accordingly, the court need not reach the issue of whether qualified immunity shields the individual Defendants from liability.

22

## V. Conclusion

Accordingly, the Defendants' Motion for Summary Judgment is **DENIED** with respect to the City of Newport News and the individual Defendants in their official capacities, and **GRANTED** with respect to the individual Defendants in their personal capacities. The Clerk is **DIRECTED** to forward a copy of this Opinion to counsel for the parties.

Counsel shall contact the Calendar Clerk forthwith to set this matter for a Supplemental Final Pretrial Conference and a jury trial on the remaining claim before the court.

**IT IS SO ORDERED.**

/s/
Rebecca Beach Smith
Chief
United States District Judge

REBECCA BEACH SMITH
CHIEF UNITED STATES DISTRICT JUDGE

Newport News, Virginia

February 6 , 2013